John T. Lewis* (DC Bar No. 1033826)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
jlewis@democracyforward.org
(202) 448-9090

*Counsel for Amici Curiae American Immigration Lawyers Association, Catholic Legal Immigration Network, Inc., National Immigrant Justice Center, National Immigration Law Center, and Refugee and Immigrant Center for Education and Legal Services*

\*Admitted *pro hac vice*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>U.S. Department of Homeland Security, *et al.*,<br><br>　　　　Defendants. | Case No. 2:21-cv-00186-PHX-SRB<br><br>**BRIEF OF *AMICI CURIAE* IMMIGRATION ORGANIZATIONS IN SUPPORT OF DEFENDANTS** |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

ARGUMENT ..................................................................................................................... 5

    I.    The Agreement is invalid because Cuccinelli lacked the authority to sign it. ................................................................................................................ 5

        A.    McAleenan never lawfully became the Acting Secretary. .................... 5

        B.    McAleenan's invalid appointment tainted the appointments of Wolf and, in turn, Cuccinelli. ............................................................... 8

        C.    Cuccinelli's lack of authority renders the Agreement void. ............... 10

CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Al Otro Lado v. Gaynor*,
   --- F. Supp. 3d ---, 2021 WL 150987 (S.D. Cal. 2021) .................................................. 2

*Arizona v. United States*,
   567 U.S. 387 (2012) ........................................................................................................ 1

*Batalla Vidal v. Wolf*,
   --- F. Supp. 3d ---, 2020 WL 6695076 (E.D.N.Y. 2020) ...................................... *passim*

*Bullock v. U.S. Bureau of Land Mgmt.*,
   489 F. Supp. 3d 1112 (D. Mont. 2020) .......................................................................... 9

*Casa de Md., Inc. v. Wolf*,
   486 F. Supp. 3d 928 (D. Md. 2020) ........................................................................ *passim*

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) .......................................................................................... 2

*E. Bay Sanctuary Covenant v. Barr*,
   --- F. Supp. 3d ---, 2021 WL 607869 (N.D. Cal. 2021) ................................................. 2

*Edmond v. United States*,
   520 U.S. 651 (1997) ................................................................................................ 1, 12

*Fed. Crop Ins. Corp. v. Merrill*,
   332 U.S. 380 (1947) ..................................................................................................... 11

*H. Landau & Co. v. United States*,
   886 F.2d 322 (Fed. Cir. 1989) ..................................................................................... 10

*Immigrant Legal Res. Ctr. ("ILRC") v. Wolf*,
   491 F. Supp. 3d 520, 535-36 (N.D. Cal. 2020) .................................................. 2, 8, 11

*Kingdomware Techs., Inc. v. United States*,
   136 S. Ct. 1969 (2016) .................................................................................................. 7

*Kisor v. Wilkie*,
   139 S. Ct. 2400 (2019) .................................................................................................. 7

*L.M.-M. v. Cuccinelli*,
   442 F. Supp. 3d 1 (D.D.C. 2020) ........................................................................ 4, 9, 11

*La Clinica de la Raza v. Trump*,
  2020 WL 7053313 (N.D. Cal. 2020) ................................................................. 2, 6, 11

*Nw. Immigrant Rts. Project v. USCIS*,
  496 F. Supp. 3d 31, 2020 WL 5995206 (D.D.C. Oct. 8, 2020) ........................... 8, 9, 10

*Pangea Legal Servs. v. DHS*,
  --- F. Supp. 3d ---, 2021 WL 75756 (N.D. Cal. 2021) ....................................... 2, 5, 8, 10

**Constitutional Provisions, Statutes, and Regulations**

U.S. Const. art. II, § 2, cl. 2 ................................................................................................. 1

5 U.S.C.
  § 706(2) .............................................................................................................. 11

Federal Vacancies Reform Act, 5 U.S.C. § 3345 *et seq.*
  § 3346 ................................................................................................................... 5
  § 3348 ............................................................................................................. 10, 11

6 U.S.C. § 113(g)(2) .............................................................................................. 8, 10

48 C.F.R. § 1.601 (2004) ............................................................................................ 11

**Other Authorities**

Anne Joseph O'Connell, *Acting Leaders: Recent Practices, Consequences,
  and Reforms*, Brookings (July 22, 2019), https://perma.cc/2M7T-QHHY ................... 1

Anil Kalhan, *Immigration Enforcement, Strategic Entrenchment, and the
  Dead Hand of the Trump Presidency*, 2021 U. Ill. L. Rev. Online: Biden
  100 Days 46, https://perma.cc/UDT5-M4EG ............................................................. 12

GAO, B-331650, *Decision: Matter of Department of Homeland Security*
  (Aug. 14, 2020), https://perma.cc/WAH5-DLEC .......................................... 2, 5, 9, 11

Jacob Soboroff & Julia Ainsley, *Trump Administration Trying to Sabotage
  Biden Immigration Plans with Last-Minute Deals, Say Officials*, NBC
  News (Jan. 20, 2021), https://perma.cc/G5KY-R7B6 ................................................ 12

*Ratification*, U.S. Dep't of Homeland Security 2 & n.1 (Jan. 14, 2021),
  https://perma.cc/M6BE-H6Q6 .................................................................................. 10

Restatement (Third) Of Agency § 2.03 (Am. L. Inst. 2006) ............................................ 11

Tanvi Misra, *Suddenly, Ken Cuccinelli Is No. 2 at DHS*, Roll Call (Nov. 14,
  2019), https://perma.cc/B4CT-QBAH ......................................................................... 5

**INTRODUCTION**

The Appointments Clause of the U.S. Constitution directs that the President may appoint officers of the United States only "by and with the Advice and Consent of the Senate." U.S. Const. art. II, § 2, cl. 2. That requirement "is more than a matter of 'etiquette or protocol'; it is among the significant structural safeguards of the constitutional scheme." *Edmond v. United States*, 520 U.S. 651, 659 (1997) (quoting *Buckley v. Valeo*, 424 U.S. 1, 125 (1976)). Notwithstanding that constitutional mandate, the prior administration repeatedly filled positions with acting officials who had not obtained Senate confirmation. *See* Anne Joseph O'Connell, *Acting Leaders: Recent Practices, Consequences, and Reforms*, Brookings (July 22, 2019), https://perma.cc/2M7T-QHHY.

This case involves the prior administration's unlawful appointments at the Department of Homeland Security ("DHS"). Among other things, Plaintiffs the State and Attorney General of Arizona assert that DHS violated an agreement with the State (the "Agreement") to provide "180 days' written notice … and an opportunity to consult and comment" before making policy changes that would "reduce immigration enforcement." Compl. ¶¶ 24, 34-39, ECF No. 1; Compl. Ex. C at 3, ECF No. 1-2. In imposing that requirement, the Agreement purports to limit the manner in which the federal government can exercise its "constitutional power to 'establish an uniform Rule of Naturalization,' and its inherent power as sovereign to control and conduct relations with foreign nations." *Arizona v. United States*, 567 U.S. 387, 394-95 (2012) (quoting U.S. Const. art. I, § 8, cl. 4). That extraordinary constraint—signed in the waning days of the prior administration—represents nothing more than an improper effort to tie the new administration's hands.

Regardless of its substance, the Agreement is unlawful in at least one crucial respect. The Agreement was signed by an official who lacked any constitutional or statutory authority to do so: Kenneth T. Cuccinelli, then the "Senior Official Performing the Duties of the Deputy Secretary." Compl. Ex. C at 9, ECF No. 1-2. As seven courts and

1

the U.S. Government Accountability Office ("GAO") have concluded, the officials who placed Cuccinelli in power themselves lacked any lawful authority. *See, e.g.*, *E. Bay Sanctuary Covenant v. Barr*, --- F. Supp. 3d ---, 2021 WL 607869, at *4 (N.D. Cal. 2021); *Pangea Legal Servs. v. DHS*, --- F. Supp. 3d ---, 2021 WL 75756, at *6 (N.D. Cal. 2021); *La Clinica de la Raza v. Trump*, 2020 WL 7053313, at *8 (N.D. Cal. 2020); *Batalla Vidal v. Wolf*, --- F. Supp. 3d ---, 2020 WL 6695076, at *8 (E.D.N.Y. 2020); *Casa de Md., Inc. v. Wolf*, 486 F. Supp. 3d 928, 958-59 (D. Md. 2020); *Immigrant Legal Res. Ctr.* ("*ILRC*") *v. Wolf*, 491 F. Supp. 3d 520, 535-36 (N.D. Cal. 2020); GAO, B-331650, *Decision: Matter of Department of Homeland Security* (Aug. 14, 2020), https://perma.cc/WAH5-DLEC [hereinafter *GAO Decision*]; *see also Al Otro Lado v. Gaynor*, --- F. Supp. 3d ---, 2021 WL 150987, at *5 n.4 (S.D. Cal. 2021). Because Cuccinelli was never lawfully appointed to a position that could bind the Department to a contract of such magnitude, he lacked any authority to execute the Agreement.

Accordingly, Arizona's motion for a preliminary injunction should be denied to the extent it relies on the Agreement, and any applicable counts of its Complaint should be dismissed.

## BACKGROUND

Ken Cuccinelli's appointment as Senior Official Performing the Duties of the Deputy Secretary was one of many unlawful appointments made by the prior administration at the Department of Homeland Security. The following facts are recounted at length in the multiple decisions cited above and corroborated by judicially noticeable government documents. *Cf. Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities[.]"). In this regard, *amici* largely cite to the decision in *Batalla Vidal* which, in granting summary judgment to the plaintiffs,

necessarily found that there were no disputes of material fact as to these events. 2020 WL 6695076, at *5, *14.

The order of succession at DHS has been governed by Delegation Order 00106 since it was first issued by then-Secretary Jeh Johnson in December 2016. *Id.* at *2. That order established two separate paths through which an official could assume the functions and duties of the Secretary on an acting basis. The first path governed when the Secretary died, resigned, or was unable to perform the functions of the office, and followed an order of succession established in Executive Order 13,753. The second path governed when the Secretary was unavailable to act during a disaster or catastrophic emergency and followed an order of succession established in Annex A to Delegation Order 00106. *Id.*

On April 9, 2019, the last Senate-confirmed DHS Secretary of the prior administration, Kirstjen Nielsen, altered the second path by amending Annex A (the "April Order"). Prior to the April Order's alteration, both the first and the second paths established the same succession order: (1) Deputy Secretary, (2) Under Secretary for Management, (3) Administrator of the Federal Emergency Management Agency ("FEMA"), and (4) Director of the Cybersecurity and Infrastructure Security Agency ("CISA"). *Id.*[1] Under the April Order, however, Secretary Nielsen amended Annex A to provide that the following order would govern if the Secretary became unavailable due to an emergency or catastrophic event: (1) Deputy Secretary, (2) Under Secretary for Management, (3) Commissioner of Customs and Border Protection ("CBP"), and (4) Administrator of FEMA. *Id.* at *3. Importantly, the April Order did not disturb the succession order that would govern if a Secretary died, resigned, or was unable to perform

---

[1]   At the time, the Director of CISA was referred to as the Under Secretary for National Protection and Programs. *Casa de Md.*, 486 F. Supp. 3d at 958 n.15.

3

the functions and duties of the office, which would continue to follow the path set forth in Executive Order 13,753. *Id.*

Thus, when Secretary Nielsen resigned on April 10, the order of succession specified by Executive Order 13,573 was triggered—meaning that Christopher Krebs, as the confirmed Director of CISA, should have ascended to the role of Acting Secretary. *Id.* at *8.[2] Nevertheless, relying on the April Order's amendment to the succession order in Annex A, the Commissioner of CBP, Kevin McAleenan, claimed to step into the role of Acting Secretary. *Id.* at *3.

In that capacity, McAleenan named Cuccinelli as the Principal Deputy Director of U.S. Citizenship and Immigration Services ("USCIS"), and simultaneously took a series of extraordinary actions designed to install Cuccinelli as the Acting Director of USCIS. These steps, along with several directives issued by Cuccinelli in his purported role as Acting Director, were themselves later held to be unlawful. *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1 (D.D.C. 2020), *appeal dismissed*, 2020 WL 5358686 (D.C. Cir. 2020).

Over two hundred days later, on November 8, McAleenan used his purported authority as Acting Secretary to again change the order of succession (the "November Order"). *Batalla Vidal*, 2020 WL 6695076, at *3. McAleenan stipulated that Annex A would provide the only order of succession, regardless of the circumstances of the vacancy, and amended Annex A to elevate the Undersecretary for Strategy, Policy, and Plans from eleventh in the line of succession to fourth, following the CBP Commissioner. *Id.* At the time, Executive Order 13,753 still provided that the Director of CISA—Christopher Krebs—would become the Acting Secretary. Nevertheless, when McAleenan

---

[2]   The position of FEMA Administrator was vacant following the resignation of Administrator Brock Long in March 2019. *Batalla Vidal*, 2020 WL 6695076, at *3.

resigned on November 13, Chad Wolf purported to become the Acting Secretary by virtue of his confirmation as Undersecretary for Strategy, Policy, and Plans. *Id.*

That same day, Wolf purported to amend Annex B to Delegation Order 00106 to elevate Cuccinelli, as the Principal Deputy Director of USCIS, in the line of succession for Deputy Secretary. *GAO Decision*, *supra* page 2, at 10. Wolf simultaneously announced that Cuccinelli would serve as "Acting Deputy Secretary" for DHS. *See* Tanvi Misra, *Suddenly, Ken Cuccinelli Is No. 2 at DHS*, Roll Call (Nov. 14, 2019), https://perma.cc/B4CT-QBAH. However, because the Federal Vacancies Reform Act's 210-day time limit for an Acting Deputy Secretary had already expired, *see* 5 U.S.C. § 3346, Wolf formally named Cuccinelli the Senior Official Performing the Duties of the Deputy Secretary. *GAO Decision*, *supra* page 2, at 10-11 n.14.

It is in that capacity that Cuccinelli signed the Agreement upon which Arizona relies in this lawsuit. *See* Compl. Ex. C at 9, ECF No. 1-2.

## ARGUMENT

**I.   The Agreement is invalid because Cuccinelli lacked the authority to sign it.**

Although Cuccinelli signed the Agreement at the heart of this case in his capacity as Senior Official Performing the Duties of the Deputy Secretary, he was never lawfully appointed to that role. As seven courts have concluded, after a "painstaking analysis of the facts," *Pangea Legal Servs.*, 2021 WL 75756, at *4, Kevin McAleenan never lawfully became the Acting Secretary. He therefore lacked the authority to amend the succession order to install Chad Wolf as Acting Secretary, and Wolf, in turn, lacked the authority to name Cuccinelli to his position. Long story short: Cuccinelli never acquired the authority to sign the Agreement upon which Arizona relies, and that agreement is therefore a nullity.

**A.   McAleenan never lawfully became the Acting Secretary.**

There is no question Kirstjen Nielsen resigned as Secretary of Homeland Security on April 10, 2019. *Batalla Vidal*, 2020 WL 6695076, at *3. There is similarly no

reasonable dispute that, at the time she did so, Delegation Order 00106 stipulated that, "[i]n case of the Secretary's … resignation, … the orderly succession of officials is governed by Executive Order 13,753, amended on December 9, 2016." *Id.* at *8. And Executive Order 13,753 is plain as day: it placed the CISA Director ahead of the CBP Commissioner. *Id.* (citing Exec. Order 13,753). In other words, when Secretary Kirstjen Nielsen resigned, Christopher Krebs became the lawful Acting Secretary, not Kevin McAleenan.

Against these unambiguous and uncontested facts, Arizona may respond that Nielsen intended, by amending Annex A of Delegation Order 00106, to provide a general order of succession, including in cases where the Secretary resigned. But what Nielsen did is abundantly clear: she amended Annex A "by striking the text of [Annex A] in its entirety" and inserting a different line of succession. *Casa de Md.*, 486 F. Supp. 3d at 958. She did not change the circumstances in which Annex A applied. In the circumstance of a resignation, Executive Order 13,753 remained controlling—and that order made Krebs, not McAleenan, the Acting Secretary.

Accepting McAleenan's appointment would therefore require the Court to "ignore official agency policy documents and invalidate the plain text of the April Delegation because it does not comport with [then-Secretary Nielsen's] supposed intent." *Batalla Vidal*, 2020 WL 6695076, at *9. "On the plain text, Secretary Nielsen amended the order of officials in Annex A but did nothing to change when Annex A applied," and the Court should "credit[] the text of the law over *ex post* explanations." *Id.* "Had Secretary Nielsen intended to modify the order of succession applicable in case of the Secretary's death, resignation, or inability to perform the functions of the Office, then her order could have so stated." *La Clinica*, 2020 WL 6940934, at *14; *see also Casa de Md.*, 486 F. Supp. 3d at

957 ("[T]he Government counters, essentially, that Delegation Order 00106 does not mean what it says.").

In other cases, defenders of McAleenan's appointment have unsuccessfully pointed to the preface to the April Order, which stated that Nielsen aimed to "designate the order of succession." *See Casa de Md.*, 486 F. Supp. 3d at 959-60 (citation omitted). They extrapolate from this language that Nielsen intended to designate *the* order of succession for all circumstances, not merely one of multiple paths, and that Nielsen intended to designate the order of *succession*, which McAleenan's defenders characterize as different from the order of *delegation* for catastrophic emergencies. To be sure, by amending Annex A, Nielsen *did* change the order of succession—*i.e.*, the order in which officials would assume the role of Secretary; she just did not do so in the case of a resignation, which is what occurred in this instance. The Court cannot "eschew the plain meaning of Nielsen's order and divine her intent as meaning something else." *Id.* at 960; *see also Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1978 (2016) ("[P]refatory clauses or preambles cannot change the scope of the operative clause.").

McAleenan's defenders have also suggested that Delegation Order 00106 is an "administrative," "non-binding document"—such that Nielsen's intent is the only thing that matters. But they cite "no authority" for that position, and "Delegation Order 00106 is the only written repository that memorializes [the] Secretary's changes to the succession orders." *Casa de Md.*, 486 F. Supp. 3d at 959-60. "[I]f the rule of law means anything, it means that we are governed by the public meaning of the words found in statutes and regulations, not by their authors' private intentions." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2441 (2019) (Gorsuch, J., concurring in the judgment).

These arguments also fail to account for McAleenan's own subsequent changes to the order of succession. If Nielsen had already amended Delegation Order 00106 to make Annex A the exclusive path, then there would have been no need for McAleenan to

7

expressly amend the Order months later to provide that "[i]n the case of the Secretary's death, resignation, or inability to perform the functions of the Office, the order of succession of officials is governed by Annex A." *ILRC*, 491 F. Supp. 3d at 533, 535 (quotation omitted). "[T]he fact that Mr. McAleenan attempted to replace E.O. 13753 with Annex A … is strong evidence that E.O. 13753 was the operative law at the time." *Batalla Vidal*, 2020 WL 6695076, at *8. And under Executive Order 13,753, when Nielsen resigned as Secretary, Krebs, not McAleenan, became the lawful Acting Secretary.

### B.  McAleenan's invalid appointment tainted the appointments of Wolf and, in turn, Cuccinelli.

Before he resigned from government service, McAleenan attempted to amend the order of succession again to install Chad Wolf as Acting Secretary. But only the Secretary of Homeland Security has the authority to "designate such other officers of the Department in further order of succession to serve as Acting Secretary." 6 U.S.C. § 113(g)(2). Because McAleenan never lawfully became the Acting Secretary, he "lacked the authority to amend the order of succession to ensure Wolf's installation as Acting Secretary." *Casa de Md.*, 486 F. Supp. 3d at 960; *see also Pangea Legal Servs.*, 2021 WL 75756, at *5 ("Because the passing of the torch from Nielsen to McAleenan was ineffective, the attempt by McAleenan to pass it in turn to Wolf had no legal effect whatsoever."); *Batalla Vidal*, 2020 WL 6695076, at *8 ("Because Mr. McAleenan had no authority, the November [Order]—which had the effect of implanting Mr. Wolf as Acting Secretary of Homeland Security—was not an authorized agency action.").

Even if, contrary to the conclusions of all these courts, McAleenan had lawfully become the Acting Secretary, only a Senate-confirmed Secretary has the authority to amend the order of succession under Section 113(g)(2). *See Nw. Immigrant Rts. Project v. USCIS*, 496 F. Supp. 3d 31, 2020 WL 5995206, at *24 (D.D.C. Oct. 8, 2020), *appeal dismissed*, No. 20-5369, 2021 WL 161666 (D.C. Cir. 2021). A contrary reading would

8

raise significant constitutional concerns by allowing an inferior officer to "alter the order of succession in a manner that, in effect, chooses which of the many officers serving at the Department will become the Acting Secretary." *Id.* at *20. Either way, McAleenan's attempt to anoint Wolf as his successor, rather than Krebs, was unsuccessful.

Wolf therefore lacked the authority to name Cuccinelli the Senior Official Performing the Duties of the Deputy Secretary. According to DHS, Wolf acted under his purported authority as Acting Secretary to rearrange the order of succession for the Deputy Secretary to elevate the Principal Deputy Director of USCIS. *GAO Decision*, *supra* page 2, at 10-11.[3] But because Wolf never lawfully became the Acting Secretary, he, like McAleenan before him, never acquired the authority to amend the order of succession at all. *Id.* Nor did Cuccinelli lawfully become the Principal Deputy Director of USCIS in the first place; McAleenan only appointed him to that role by exercising his purported—but in reality nonexistent—authority as Acting Secretary. *See L.M.-M.*, 442 F. Supp. 3d at 10-11 (describing the manner in which Cuccinelli was appointed). In other words, Wolf unlawfully attempted to elevate an official who was *already* serving unlawfully.

Nor did any lawfully appointed official ratify the extraordinary maneuvers needed to place Cuccinelli in that role. After the prior administration became aware of the unlawful nature of Wolf's appointment, it undertook several steps to try to legitimize Wolf's tenure—after which Wolf issued a series of orders purporting to "affirm and ratify any and all prior regulatory actions involving delegable duties that" he had taken. *See, e.g.*,

---

[3]  It is immaterial that Wolf named Cuccinelli the Senior Official Performing the Duties of the Deputy Secretary rather than simply the Deputy Secretary. As one court explained in invalidating the appointment of an "official performing the Director's duties under the Secretary's delegation," "the Executive Branch cannot use wordplay to avoid constitutional and statutory requirements." *Bullock v. U.S. Bureau of Land Mgmt.*, 489 F. Supp. 3d 1112, 1125, 1127 (D. Mont. 2020) (citation omitted). Whatever his official title, Cuccinelli was repeatedly presented by the Department as the Acting Deputy Secretary and purported to exercise the authority of that role. *See id.* at 1128.

*Ratification*, U.S. Dep't of Homeland Security 2 & n.1 (Jan. 14, 2021), https://perma.cc/M6BE-H6Q6. It is doubtful that any of the efforts to confer authority upon Wolf were successful. *See, e.g.*, *Pangea Legal Servs.*, 2021 WL 75756, at *5 ("Wolf's effort to ratify his June 2020 actions as Acting Secretary is of no moment legally[.]"); *Batalla Vidal*, 2020 WL 6695076, at *9 ("Wolf did not (and does not) possess the power to ratify any of his former actions[.]"). But the Court need not reach this question because the Secretary's authority to amend the order of succession—even assuming it can be exercised by an *Acting* Secretary, *see Nw. Immigrant Rts. Project*, 2020 WL 5995206, at *24—is not a *delegable* duty. That power is specifically vested in "the Secretary." 6 U.S.C. § 113(g)(2). And rightfully so, considering that the Secretary is the Head of the Department charged with managing its operations. For that reason, Wolf's attempt to ratify all of his actions involving *delegable* duties did not encompass his attempt to appoint Cuccinelli.

Nor could it, for many of the same reasons. The Federal Vacancies Reform Act contains an enforcement provision wherein certain actions performed by an unlawful acting official may not be ratified, even by a subsequent legitimate official. *See* 5 U.S.C. § 3348. Specifically, an action "required by statute to be performed" by a specific vacant office "shall have no force or effect," and "may not be ratified." *Id.* § 3348(d). Because the power to set an order of succession is vested in the Secretary alone, Wolf could not have ratified his prior change to the order of succession.

   C. **Cuccinelli's lack of authority renders the Agreement void.**

Because Cuccinelli never lawfully became the Senior Official Performing the Duties of the Deputy Secretary, he lacked the authority to bind DHS to the Agreement. To enforce an agreement with the federal government, the burden rests with the party seeking enforcement to "show that the officer whose conduct is relied upon had actual authority to bind the government in contract." *H. Landau & Co. v. United States*, 886 F.2d 322, 324

(Fed. Cir. 1989) (quotation omitted). Apparent authority is not enough; "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947).

Cuccinelli signed the Agreement in his capacity as Senior Official Performing the Duties of the Deputy Secretary. *See* Compl. Ex. C at 9, ECF No. 1-2. But he was neither lawfully in that role, nor lawfully the Acting Director of USCIS, *see L.M.-M.*, 442 F. Supp. 3d at 10, nor even the lawful Principal Deputy Director of USCIS, *see supra* page 9. Indeed, it is not clear that Cuccinelli possessed *any* lawful position at DHS. At most, Cuccinelli was a mere employee—one who lacked the authority to bind the government to contracts, much less contracts of such magnitude. *Cf.* 48 C.F.R. § 1.601 (2004) ("Contracts may be entered into and signed on behalf of the Government only by contracting officers."). Arizona cannot seek to hold DHS to a contract signed by a serial usurper.[4]

Ordinary principles of administrative law yield the same result. As explained above, the Federal Vacancies Reform Act provides that certain actions taken by officials acting unlawfully in a Senate-confirmed role are deemed to "have no force or effect." 5 U.S.C. § 3348(d)(1). Similarly, the Administrative Procedure Act directs that a court shall "hold unlawful and set aside agency action … found to be" "not in accordance with law," taken by an official acting "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or enacted "without observance of procedure required by law." 5 U.S.C.

---

[4]   Even if apparent authority were relevant, Arizona could not have "reasonably believe[d]" that Cuccinelli had the authority to sign the Agreement, *see* Restatement (Third) Of Agency § 2.03 (Am. L. Inst. 2006), given that multiple courts and the GAO had already described the underlying defects in his appointment by the time the Agreement was executed on January 8, 2021. *See, e.g.*, *La Clinica*, 2020 WL 7053313 (Nov. 25, 2020); *Batalla Vidal*, 2020 WL 6695076 (Nov. 14, 2020); *ILRC*, 491 F. Supp. 3d 520 (Sept. 29, 2020); *Casa de Md., Inc.*, 486 F. Supp. 3d 928 (Sept. 11, 2020); *GAO Decision*, *supra* page 2, at 10-11 (Aug. 14, 2020).

§ 706(2)(A), (C), (D). In purporting to execute the Agreement on behalf of the federal government, Cuccinelli both acted unlawfully in a Senate-confirmed position and exceeded his authority. The Agreement is therefore invalid and unenforceable.

That Cuccinelli purported to execute a contract on behalf of the federal government, which he had no power to bind, would be bad enough. But Cuccinelli certainly did not have the authority to contract away the government's sovereign powers over immigration law in a brazen effort to tie the hands of an incoming administration.[5] The exercise of such authority by officials without the advice and consent of the Senate is precisely the sort of conduct that the "significant structural safeguard[]" of the Appointments Clause and the vacancies laws are intended to guard against. *Edmond*, 520 U.S. at 659. The Court should decline to enforce such a sweeping agreement, brought into existence only through a concerted effort to break the laws concerning who may exercise executive power.

## CONCLUSION

The Court should hold that the Agreement is void, deny Arizona's motion for a preliminary injunction on that ground, and dismiss all applicable counts of Arizona's complaint.

---

[5]   That was the plain intent of the Agreement. *See, e.g.*, Anil Kalhan, *Immigration Enforcement, Strategic Entrenchment, and the Dead Hand of the Trump Presidency*, 2021 U. Ill. L. Rev. Online: Biden 100 Days 46, https://perma.cc/UDT5-M4EG (referring to such agreements as "entrenchment" agreements); Jacob Soboroff & Julia Ainsley, *Trump Administration Trying to Sabotage Biden Immigration Plans with Last-Minute Deals, Say Officials*, NBC News (Jan. 20, 2021), https://perma.cc/G5KY-R7B6 (quoting official as stating that "[t]he whole point is 110 percent to screw the incoming administration from doing anything for six months"). To that end, the Agreement applies only to changes that would *reduce* immigration enforcement. Compl. Ex. C at 3, ECF No. 1-2.

Dated: May 6, 2021

Respectfully submitted,

*/s/ John T. Lewis*
John T. Lewis* (DC Bar No. 1033826)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
jlewis@democracyforward.org
(202) 448-9090

*Counsel for Amici Curiae American Immigration Lawyers Association, Catholic Legal Immigration Network, Inc., National Immigrant Justice Center, National Immigration Law Center, and Refugee and Immigrant Center for Education and Legal Services*

*Admitted *pro hac vice*

# CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2021, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

*/s/ John T. Lewis*
John T. Lewis