1

2

**MARK BRNOVICH**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

**AUSTIN KNUDSEN**
**MONTANA ATTORNEY GENERAL**

3

4

5

6

7

8

9

10

11

Joseph A. Kanefield (No. 15838)
Brunn (Beau) W. Roysden III (No. 28698)
Drew C. Ensign (No. 25463)
Anthony R. Napolitano (No. 34586)
Robert Makar (No. 33579)
2005 N. Central Ave
Phoenix, AZ 85004-1592
Phone: (602) 542-8958
Joe.Kanefield@azag.gov
Beau.Roysden@azag.gov
Drew.Ensign@azag.gov
Anthony.Napolitano@azag.gov
Robert.Makar@azag.gov

David M. Dewhirst*
 *Solicitor General*
215 N Sanders St.
Helena, MT 59601
Phone: (406) 444-4145
David.Dewhirst@mt.gov

*pro hac vice granted*

*Attorneys for Plaintiff State of Montana*

12

*Attorneys for Plaintiffs State of Arizona and*

13

*Mark Brnovich in his official capacity*

14

## UNITED STATES DISTRICT COURT

15

## DISTRICT OF ARIZONA

16

17

State of Arizona; State of Montana; and
Mark Brnovich, in his official capacity as
Attorney General of Arizona,

No. 2:21-cv-00186-SRB

**PLAINTIFFS' NOTICE AND
RESPONSE TO FEDERAL
DEFENDANTS' NOTICE (DOC. 87)**

18

         Plaintiffs,

19

         v.

20

21

22

23

24

25

26

27

28

United States Department of Homeland
Security; United States of America;
Alejandro Mayorkas, in his official
capacity as Secretary of Homeland
Security; Troy Miller, in his official
capacity as Acting Commissioner of
United States Customs and Border
Protection; Tae Johnson, in his official
capacity as Acting Director of United
States Immigration and Customs
Enforcement; and Tracy Renaud, in her
official capacity as Acting Director of U.S.
Citizenship and Immigration Services,

         Defendants.

**NOTICE/RESPONSE TO NOTICE**

Plaintiffs, the States of Arizona and Montana, hereby respond to Federal Defendants' citation of *California v. Texas*, No. 19-840 (U.S. June 17, 2021), and arguments under the same (Doc. 87).

According to Federal Defendants, *California v. Texas* "underscores that Arizona and Montana cannot establish standing" because their costs "are not fairly traceable to the policies that the States challenge, the February 18, 2021 ICE Memorandum," and "the States have not met their evidentiary burden to establish that third parties will take any specific actions because of that memorandum." Doc. 87 at 2. But Defendants' reliance on *California v. Texas* is not only unavailing, it also continues Federal Defendants' remarkable evasions as to what the evidentiary record in this case actually establishes— which, indeed, this Court has also recognized.   Federal Defendants' notice should therefore be rejected for four reasons.

*First*, the bulk of the acts and omissions at issue are not those of "third parties" (Doc. 87 at 2), but rather those of Defendants themselves.  When Defendants—contrary to the unambiguous obligation of 8 U.S.C. § 1231(a)(1)(A)—refuse to deport recently released felons with final orders of removal, it is *their* actions that cause the States to incur community supervision cost.  Not those of any "third party."  Nor was it third parties that issued the Interim Guidance and Moratorium without complying with APA notice-and-comment requirements.

Notably, this Court had little trouble recognizing that Defendants were the direct cause of Plaintiffs' injuries at the May 27 hearing: "[W]hat the evidence … shows is … that *Immigration and Customs Enforcement lifted detainer*s that were previously in place, *has not placed detainers on individuals* that … they know or can know with ease are in detention or incarceration that have final orders of removal and, most significantly, that *they have only removed some incredibly small number* -- seven or ten – nonpriority [cases]." 5/27/21 Tr. at 14-15 (emphasis added).  Those are not the actions of "third parties" but rather those of Defendants themselves.  Defendants do not even attempt to

1

square this Court's observations with their instant arguments.

*Second*, the record is clear that the harms to the States are directly caused by change in substantive policies effectuated by the Interim Guidance, and not the pretextual "scarce resources" justification offered by the Interim Guidance or other governmental actions. As previously explained, the testimony of Acting ICE Phoenix Field Office Director Albert Carter directly establishes the causal chain between the Interim Guidance and the resulting harms to the States. *See* Doc. 79 at 2-3. Director Carter testified the "*only factor*" he could think of for the dropoff in 2/2021 was the enforcement priorities, he did not observe any contributing factor, and further that resource constraints were not responsible. *Id.* at 3 (quoting Carter Deposition (Dkt. 79-1 Exhibit DD at 88:20-89:1)).

Similarly, Director Tae Johnson's wee-hours email of February 4, 2021 belies Defendants' attempt to portray the relevant drop in deportations as anything other than the predictable *and intentionally sought* effect of Defendants' actions. Specifically—in the clearest possible terms—Director Johnson commanded: "Effective immediately … *only those who meet the [Section B] priorities will be removed*." Dkt. 64 at 5 (emphasis added). The causal chain from this unambiguous command and the subsequent and dramatic drop in deportations is neither difficult to discern nor runs through the actions of third parties. Moreover, Defendants' filing today also notably continues their unbroken refusal to acknowledge this crucial email and even attempt to offer any explanation of how it could possibly be lawful.

This Court has similarly recognized the direct causal relationship between the February 18 Interim Guidance and the resulting decreases in deportations. Specifically, this Court has explained that "So, of 325 individuals *who, before February 18th, would have been put into immigration detention and removed, only seven have*. Doesn't that sound like a prohibition on removal of anybody other than in the first three categories?" 5/27/21 Tr. at 19-20 (emphasis added). Defendants make no attempt to reconcile their current causation arguments with this Court's recognition of but-for causation.

*Third*, even as to third parties, *California v. Texas* still provides standing can be

established based on third-party actions where the "third parties will likely react in predictable ways." Slip op. at 11 (quoting *Department of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019)). Defendants' policies have affirmatively signaled reduced enforcement, which has quite predictably resulted in dramatically increased border crossings as would-be immigrants react to the clear message encoded in the Interim Guidance (and Moratorium before that). As set forth by DHS's own data in Figure 1 below, the entirely predictable—and subsequently observed—effect of Defendants' actions was a drastic spike in CPB encounters beginning in February 2021 and continually ramping up thereafter. This Court has similarly recognized that "[T]he numbers [of removals] seemed to have been declining from February 18th for each month through the middle of April." 5/27/21 Tr. at 21. Third parties may have reasonably noticed as well.

*Fourth*, Defendants' apparent suggestion that the States' decisions to enforce their own criminal laws and sentences is some form of non-cognizable self-inflicted injury is specious. Specifically, Defendants contend (at 2) that the States injury results from "the obligation to provide community supervision pursuant to a state criminal sentence," and not the Interim Guidance. But the evidence is clear (and this Court has recognized) that *but for* the Interim Guidance, hundreds of aliens with criminal convictions and final orders of removal would be deported—obviating any need for the Plaintiff States to incur costs of community supervision. *Supra* at 1. And the Defendants' implicit premise—*i.e.*, that the State should simply elect not to enforce its criminal laws and decline to enforce the criminal sentences imposed by their courts, and thereby avoid the harms of the Interim Guidance—is, quite frankly, bizarre. Defendants unsurprisingly have not cited a *single decision* where a State's "decision" to carry out the final criminal sentences of its courts has been held to be a form of self-inflicted injury that breaks the causal Article III standing chain. There is no reason for this case to be the first. (But Defendants' suggestion is perhaps not too surprising as it comes from parties that regard carrying out the unequivocal law-enforcement mandate of 8 U.S.C. § 1231(a)(1)(A) as being merely optional.)

**Figure 1: CPB Encounters With Aliens Per Month**



Source: https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters.

## CONCLUSION

For the foregoing reasons, Plaintiffs' reliance on *California v. Texas* to defeat the States' standing is unavailing and directly contrary to the evidentiary record here.

RESPECTFULLY SUBMITTED this 17th day of June, 2021.

**MARK BRNOVICH**
**ATTORNEY GENERAL**

By /s/ *Anthony R. Napolitano*
    Joseph A. Kanefield (No. 15838)
    Brunn W. Roysden III (No. 28698)
    Drew C. Ensign (No. 25463)
    Anthony R. Napolitano (No. 34586)
    Robert J. Makar (No. 33579)
     *Assistant Attorneys General*

*Attorneys for Plaintiffs Arizona and Arizona Attorney General Mark Brnovich*

**AUSTIN KNUDSEN**
**ATTORNEY GENERAL OF MONTANA**

/s/ *David M.S. Dewhirst (with permission)*
David M.S. Dewhirst*
 *Solicitor General*
*Pro hac vice granted*

*Attorneys for Plaintiff State of Montana*

CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2021, I electronically transmitted the attached document to the Clerk's office using CM/ECF System for filing.  Notice of this filing is sent by email to all parties by operation of the Court's electronic filing system.

   */s/ Anthony R. Napolitano*