BRIAN M. BOYNTON
ACTING ASSISTANT ATTORNEY GENERAL

BRIGHAM J. BOWEN
ASSISTANT BRANCH DIRECTOR

Michael F. Knapp (CA Bar No. 314104)
Adam Kirschner (IL Bar No. 6286601)
Brian C. Rosen-Shaud (ME Bar No. 006018)
Kuntal Cholera (DC Bar No. 1031523)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW Room 12008
Washington, D.C. 20530
(202) 514-2071 (telephone)
(202) 616-8470 (facsimile)
Email: Michael.F.Knapp@usdoj.gov
       Adam.Kirschner@usdoj.gov
       Brian.C.Rosen-Shaud@usdoj.gov
       Kuntal.Cholera@usdoj.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| State of Arizona, et al.,<br>  Plaintiffs,<br><br>v.<br><br>United States Department of Homeland Security, et al.,<br>  Defendants. | No. 2:21-cv-00186-SRB<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION** |

Arizona and Montana sought to preliminarily enjoin the Department of Homeland Security (DHS) and U.S. Immigration and Customs Enforcement (ICE) from adhering to immigration enforcement priorities established by the new Presidential administration.[1] *See* ECF Nos. 17, 64. Defendants opposed and moved to dismiss. *See* ECF Nos. 26, 69, 59. This Court granted Defendants' motion to dismiss and denied the motion for preliminary injunction. ECF No. 91; *see also* ECF No. 42. The States have noticed an interlocutory appeal of the denial of a preliminary injunction, ECF No. 92, and now move for reconsideration, Pls.' Mot. for Reconsideration, ECF No. 96.[2]

This Court correctly rejected the States' contention that § 1231(a)(1) imposes a judicially enforceable duty on the Secretary to remove all noncitizens with final orders of removal within 90 days. *See* Order at 16–18, ECF No. 91. Nothing in the Supreme Court's recent decision in *Johnson v. Guzman Chavez* undermines that conclusion, and thus there has been no "intervening change in controlling law" to warrant reconsideration. *See Sch. Dist. No. 1J, Multnomah Cty. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993) (providing standard for reconsideration); *cf. Angel Jet Servs., LLC v. Giant Eagle, Inc.*, No. CV 09-1489-PHX-SRB, 2011 WL 13070113, at *7 (D. Ariz. Nov. 29, 2011) (denying motion for reconsideration based on intervening case because the case did "not constitute an intervening

---

[1] The Court is familiar with the additional factual and procedural background in this case, which it summarized in its recent Order. *See* ECF No. 91 at 1–7.

[2] There is at least a question regarding the Court's continuing jurisdiction to reconsider its June 30, 2021, Order. The Court granted Defendants' motion to dismiss and denied the States' motion for preliminary injunction in a single combined Order, ECF No. 91. The States then filed an immediate notice of appeal of "the order entered in this action on June 30, 2021 (Doc. 91), which denied Plaintiffs' request for a preliminary injunction, as well as all orders culminating in that order." ECF No. 92. Only then did the States file a motion for reconsideration. ECF No. 96. "A Notice of Appeal generally divests a District Court of jurisdiction." *Webb v. Cty. of Pima*, 2018 WL 8805978, at *1 (D. Ariz. Sept. 14, 2018); *see also See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). The States have appealed the single Order they now seek reconsideration of, "as well as all orders culminating in that order," ECF No. 92, but the Court has announced but not yet entered judgment, *see* Fed. R. App. P. 4(a)(2). If the Court intends to grant the States' motion (the motion should be denied for the reasons set forth herein), it should, in an abundance of caution, make an indicative ruling using the procedures set forth in Fed. R. Civ. P. 62.1.

change in controlling law"). The Court should deny Plaintiffs' Motion for Reconsideration.

**I.     Two longstanding doctrines establish the Secretary's discretion.**

Two longstanding doctrines unambiguously support the Secretary's discretion to set priorities for enforcement of final orders of removal. First, the Supreme Court has long recognized the significance of discretion in enforcement of immigration laws. Indeed, the Supreme Court has described "the broad discretion exercised by immigration officials" as a "principal feature of the removal system." *Arizona v. United States*, 567 U.S. 387, 396 (2012). That discretion may be guided by any of a multitude of practical and policy factors. "Discretion in the enforcement of immigration laws embraces immediate human concerns," including a noncitizen's "ties to the community," the relative "danger" a noncitizen poses, and "the dynamic nature of relations with other countries." *Id.* The Supreme Court has emphasized that "[r]emoval decisions" implicate the "customary policy of deference to the President in matters of foreign affairs" because they touch on "our relations with foreign powers and require consideration of changing political and economic circumstances." *Jama v. Immigration and Customs Enforcement,* 543 U.S. 335, 348 (2005) (quoting *Mathews v. Diaz*, 426 U.S. 67, 81 (1976)). In light of these concerns, as the Supreme Court has explicitly recognized, "the Executive has discretion to abandon the endeavor" at "each stage" of the removal process, including "'execut[ing] removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 483 (1999) (quoting 8 U.S.C. § 1252(g) (alteration in original)). It may do so "for humanitarian reasons" or "simply for its own convenience." *Id.*

Second, the Supreme Court has also long recognized that inherent in the Executive power is the discretion to structure enforcement consistent with the Executive's priorities. Thus, "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *see also id.* (collecting citations); *cf. Sure-Tan, Inc.* v. *NLRB*, 467 U.S. 883, 897 (1984) ("[P]rivate persons such as petitioners have no judicially cognizable interest in procuring enforcement of the immigration laws by the INS."). Such decisions, the Supreme Court has explained, involve "a complicated balancing of a number of factors which are

peculiarly within [the agency's] expertise," such as "whether agency resources are best spent on this violation or another," or "whether the particular enforcement action requested best fits the agency's overall policies." *Chaney*, 470 U.S. at 831.

This enforcement discretion persists even in the face of a statute that uses the word "shall," which "legal writers sometimes use . . . to mean 'should,' 'will,' or even 'may.'" *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 n.9 (1995). As the Supreme Court held in *Town of Castle Rock v. Gonzales*, the "deep-rooted nature of law-enforcement discretion" persists "even in the presence of seemingly mandatory legislative commands." 545 U.S. 748, 761 (2005); *see also Cairo & F.R. Co. v. Hecht*, 95 U.S. 168, 170 (1877). Indeed, "a law that purports to *require* the Executive Branch to prosecute certain offenses or offenders" would "interfere with the President's Article II prosecutorial discretion." *In re Aiken Cty.*, 725 F.3d 255, 266 n.11 (D.C. Cir. 2013) (opinion of Kavanaugh, J.). Thus, the Supreme Court has rejected "out of hand the possibility that 'the mandatory language of the ordinance . . . afford[ed] the police *no* discretion.'" *Castle Rock*, 545 U.S. at 761 (discussing and quoting *Chicago v. Morales*, 527 U.S. 41, 62 n.32 (1999)) (omission and alteration in original). These principles apply in both the criminal and civil context. *See, e.g.*, *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63 (1993) (civil forfeiture); *Brock v. Pierce Cty.*, 476 U.S. 253, 265 (1986) (civil investigation by Secretary of Labor); *see also Sierra Club v. Whitman*, 268 F.3d 898, 904 (9th Cir. 2001) (environmental enforcement). Courts should be reluctant to construe such language to constrain executive officers' traditional discretion to tailor enforcement decisions to current resources and community needs.

**II.    *Guzman Chavez* does not disturb this Court's conclusion that those doctrines apply here.**

The States' Motion for Reconsideration rests on a remarkable premise: that the Supreme Court swept aside these two longstanding doctrines concerning executive discretion without briefing and without acknowledgment. To state it is to refute it.

*Guzman Chavez* arose from a habeas petition by detained noncitizens "who were removed from the United States and later reentered without authorization" and whose prior

removal orders had been "reinstated." Slip op. at 7. The noncitizens sought "withholding of removal," a form of protection from removal to a specific country based on a fear of persecution or torture if returned there, *see id.* at 5-6 (describing withholding of removal). They then sought release on bond as available for noncitizens detained under § 1226 "pending a decision on whether the alien is to be removed," but the government opposed release on bond on the ground that the noncitizens' detention was governed by § 1231, since it had already been determined that they would "be removed," and the only remaining question was where they would be sent. *Id.* at 7-8. The question before the Supreme Court was "which of those provisions"—§ 1226 or § 1231—"applies to aliens who were removed from the United States but later reentered without authorization, were subject to reinstated orders of removal, and then sought withholding of removal based on fear of persecution in the particular countries designated by their removal orders." *Id.* at 1.

The States' argument here with respect to *Guzman Chavez* is identical in every relevant aspect to the States' argument this Court already rejected with respect to the Ninth Circuit's decision in *Lema v. INS*, 341 F.3d 853, 855 (9th Cir. 2003). In that case, as in *Guzman Chavez*, the Court used language to describe § 1231(a)(1) that was suggestive of a mandate. But, as this Court cogently explained, the context of *Lema* was far afield and thus unhelpful in answering the question presented here: whether § 1231(a)(1) imposes a mandatory and enforceable duty on the Secretary to remove all noncitizens within ninety days. *See* Order at 18.

*Guzman Chavez* had nothing to do with whether § 1231(a)(1) imposes a judicially enforceable mandate on the Secretary. The only question before the Supreme Court was whether § 1231 or instead § 1226 governed the detention of a noncitizen with a reinstated order of removal who sought withholding a removal. Like the Ninth Circuit's decision in *Lema*, then, the Supreme Court's decision in *Guzman Chavez* "does not address whether all noncitizens with final orders of removal must be removed within the 90-day removal period" and it "did not concern judicial review under the APA nor present the opportunity for the [court] to address whether 'shall' means 'must' in this statute," in a manner that might create a judicially enforceable duty on the Secretary. Order at 18, ECF No. 91.

The States now emphasize that the real import of *Guzman Chavez* is its discussion of the statutory language "except as otherwise provided" in § 1231(a)(1). *See* Pls.' Mot. for Reconsideration at 3, ECF No. 96; Pls.' Reply ISO Mot. for Inj. Pending Appeal at 5, ECF No. 100. But the States continue to ignore the context of both the *Guzman Chavez* litigation (a habeas action challenging denial of bail hearings), and the specific context in which the Supreme Court referenced that statutory language. *See Illinois v. Lidster*, 540 U.S. 419, 424 (2004) ("We must read this and related general language in [a previous case] as we often read general language in judicial opinions—as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering."). It was the habeas petitioners who pointed to that language, to argue that the statute set out exceptions to when the removal period *began*. *See Guzman Chavez*, slip op. at 16. The Supreme Court examined the structure of § 1231 and rejected that argument, instead concluding that the "except as otherwise provided" language referred to exceptions to alter the length of the removal period. *See id.* at 16–17; *see also id.* at 17 n.8 (describing exceptions that "suggest an extension of the removal period beyond 90 days" as "the very feature that makes these provisions relevant" (punctuation, alterations, and citations omitted)). What the Court ultimately held, in this respect, was that "the opening clause of § 1231(a)(1)(A)"—the "except as otherwise provided language"—"refers to [provisions related to extending the removal period] and not the withholding-only provision which does not mention the length of the removal period." *Id.* at 17.

The Supreme Court did not decide—and could not, as the issue was not remotely before it—whether § 1231 imposes a mandatory duty on the Secretary to remove all noncitizens with final orders of removal within the removal period. The Supreme Court did not discuss the doctrines recognizing enforcement discretion generally, and in the immigration context specifically. It did not engage in the analysis contemplated by *Castle Rock*, or important aspects of the separation of powers. It did not discuss the Secretary's express statutory authority to establish "national immigration enforcement policies and priorities," 6 U.S.C. § 202(5). It did not discuss *Heckler v. Chaney*, the Administrative Procedure Act; § 1231(h)'s

instruction that § 1231 does not create "any" right "that is legally enforceable by any party"; or limitations on judicial review more broadly. In short, the Supreme Court's decision in *Guzman Chavez* has no bearing on, and gives no cause for reconsideration of, this Court's prior rulings in this case.

### III. On its own terms, *Guzman Chavez* is consistent with the Secretary's discretion.

The Supreme Court's decision in *Guzman Chavez*—which, again, arose as a challenge to the denial of bond hearings for certain noncitizens—itself recognizes that the Secretary will not remove all noncitizens within the removal period. In describing the statutory structure, for example, the Court explains that "the removal period may be extended" under the exceptions set out in the statute. Slip op. at 3. But, the Court explains, the statute also provides for when a noncitizen "is not removed within the 90-day removal period" even if "no exception applies." *Id.* at 4. The Court later reiterated this point: section 1231 "allows for supervised release after the 90-day removal period expires '[i]f the alien does not leave or is not removed' during that time period." Slip op. at 13 (quoting 8 U.S.C. § 1231(a)(3)).

Indeed, the Court remarked that when a noncitizen is granted protection from removal to a specific country, removal to a different country is "statutorily authorized" under § 1231, even if it is "rare." *Id.*; *see id.* at 12 (citing statistics that only 1.6% of withholding of removal recipients were actually removed). Moreover, the Supreme Court expressly recognized the numerous factors that may delay removal, including "practical" factors or "geopolitical" concerns. *Id.* at 22. These factors are, of course, among those that the Supreme Court has long recognized support the Executive's discretion in immigration enforcement factors and the judiciary's principle of noninterference in enforcement decisions. *See supra* at 2.

### CONCLUSION

The Court should deny Plaintiffs' Motion for Reconsideration.

6

RESPECTFULLY SUBMITTED this 16th day of July, 2021.

        BRIAN M. BOYNTON
        Acting Assistant Attorney General

        BRIGHAM J. BOWEN
        Assistant Branch Director
        Federal Programs Branch

        */s/ Michael F. Knapp*
        MICHAEL F. KNAPP
        CA Bar No. 314104
        Trial Attorney
        ADAM KIRSCHNER
        IL Bar No. 6286601
        Senior Trial Counsel
        BRIAN C. ROSEN-SHAUD
        ME Bar No. 006018
        KUNTAL CHOLERA
        DC Bar No. 1031523
        Trial Attorneys
        U.S. Department of Justice
        Civil Division, Federal Programs Branch
        1100 L Street, NW Room 12008
        Washington, D.C. 20530
        (202) 514-2071 (telephone)
        (202) 616-8470 (facsimile)
        Email: Michael.F.Knapp@usdoj.gov
               Adam.Kirschner@usdoj.gov
               Brian.C.Rosen-Shaud@usdoj.gov
               Kuntal.Cholera@usdoj.gov

        EREZ REUVENI
        CA Bar No. 264124
        Assistant Director
        U.S. Department of Justice
        Civil Division, Office of Immigration Litigation
        P.O. Box 868, Ben Franklin Station
        Washington, D.C. 20044
        202-307-4293 (telephone)
        Email: Erez.R.Reuveni@usdoj.gov

        *Counsel for Defendants*